H. D. HINZ, Appellant, v. LUELLA MIDDLEKAUFF, Appellee.

**VENDOR AND PURCHASER:** Contract of Sale—Meeting of Minds.
1  Evidence, in the form of correspondence, reviewed and *held* to
   wholly fail to show a contract for the sale of lands.

**FRAUDS, STATUTE OF:** Part Performance. The act of one in
2  making a deposit in a bank can avail nothing when he was
   authorized to make the deposit only in case of an acceptance
   of an offer and the evidence showed there was no acceptance.

*Appeal from Carroll District Court.*—HON. F. M. POWERS,
Judge.

TUESDAY, JANUARY 19, 1915.

ACTION in equity to enforce specific performance to sell
real estate. The trial court having sustained a demurrer to
the petition plaintiff appeals.—*Affirmed.*

*Douglas Rogers,* for appellant.

*Lee & Robb* and *C. W. Emmons,* for appellee.

WEAVER, J.—The plaintiff's petition states his alleged
cause of action substantially as follows:

The defendant, residing at Polo in the state of Illinois,
advertised for sale a described tract of land in Carroll county,
Iowa, and invited offers from persons desiring to purchase.
Responding to the advertisement plaintiff
wrote defendant asking for price and terms
of sale and plaintiff replied saying that the
land was for sale at $125 per acre, one-half
cash on March 1, 1911, and remainder in five years with
interest at five per cent. Plaintiff complained that the price
was too great and offered to purchase at $100 per acre. The
defendant declined, saying, "We have an offer of $110 per

1. VENDOR AND
   PURCHASER:
   contract of
   sale: meeting
   of minds.

acre," and added, "If you wish to increase this bid please let me know and I will submit your bid and terms to the rest of the family and give you an answer." Plaintiff then visited defendant where he orally offered to pay $27,500 for the land, paying $1,000 in cash, $15,000 by the assignment of a first mortgage security held by him on land in Audubon county, Iowa, and the remainder in cash on March 1, 1911. The defendant did not accept the offer but informed plaintiff that she would have to consult one Dr. Beal who was administrator of the estate through which she and others derived title to the land, and if the offer was satisfactory to him she would notify plaintiff by telegraph, and further said that if the offer was finally accepted the cash payment of $1,000 could be paid to a certain bank at Manning, Iowa. On the following day, June 14, 1910, defendant telegraphed plaintiff as follows: "H. D. Hinz.—Thousand cash, you guarantee note, will write." On the same date she wrote plaintiff as follows: "A message sent you this morning saying we want $1,000 cash, your note on Audubon county land guaranteed. Of course the land must be worth the note or we will not accept it. The balance to be paid March 1, 1911, when possession is given. We will have competent man look at your land and give us his opinion." On receipt of the telegram plaintiff deposited $1,000 for the defendant in the bank at Manning and after receiving the letter last referred to he wrote her saying, "You have turned things around some since I was there. I except everything but possession. Supposed was to be given when deed was to be delivered and for my responsibility you can get it of any bank in Manning of me, or you can send your man any day you like." Thereafter the correspondence proceeded as follows:

(June 18. Defendant to plaintiff.)

"Your letter recd. This is the proposition—$1,000 cash, $15,000 in note at 5 per cent. and secured by first mortgage of

Audubon Co. land you to guarantee the note. The land to be worth the money in the judgment of the competent man we will have to investigate, the balance due on March 1, 1911, when all money has been paid the deed will be delivered you to have possession March 1st, if money is paid. But you would have to forfeit your right to deed and same arrangement made as to your possession if money is not paid.

"Hoping this is clear, if not let me know. A reply should be made very soon."

(June 21.  Plaintiff to defendant.)

"Your letter received today of the 18th. I don't understand the way you write I thought it was plain understood when I was there what I can make out you want it different, what I said and you agreed was $1,000.00 cash down, the guaranteed first mortgage note of $15,000.00 as soon as you could show clear abstract and deed to be given right away and the balance March 1st, 1911, so was our agreement then and that is the only way I will do anything if you won't act soon I will not stand my offer any longer as I can get cheaper land."

(June 22.  Defendant to plaintiff.)

"Your letter recd. If you can cash your note or sell it to someone and pay the $15,000.00 cash we might deliver deed, but it would be folly for us to do so with only $1,000.00 cash & the balance not due until March 1st, 1911. I have written Dr. Beal about the matter & will let you know what he considers best under the circumstances. We have had your offer raised but as we had not heard from you we could not accept it awaiting, Yours truly."

(June 24.  Plaintiff to defendant.)

"I received your letter today and seen you are just the same yet turning things around what does that telegram and

letter mean you just as good as sold the place to me why don't you send your competent man as you said you would and make you safe and the $1,000.00 is in the bank here ever since that telegram and letter. If you don't see yourself clear with that $15,000.00 note then I keep the $15,000.00 and you keep the place until March 1st, 1911; that was you own suggestion I was to get the rent and you the interest on the $15,000.00 that makes nearly $800.00.''

Thereafter plaintiff at defendant's request sent her a description of the Audubon county land and on July 5, 1910, she addressed him as follows:

''Your letter recd. The man is to go to see the Audubon Co. land this week then we will know if the sale is to go through or not if he considers it safe we will proceed and if not we are done and will have to have a new offer that is what I wrote at first and that is the way it stands. Will let you know as soon as I can what the outcome is.''

On July 19th she again wrote:

''We have heard from our man in regard to the Audubon Co. land and he considers the note safe. Will you please send papers for the note to Dr. A. M. Beal, 2601 Sixth Ave., Moline, Illinois, so he can see if papers are all right the contract will be sent later.''

Thereupon plaintiff sent ''the papers'' to Dr. Beal who replied as follows:

''I have your letter of the 12th with mortgage of H. A. Christensen and wife to H. D. Hinz, dated Feby. 23, 1910, and conveying S. E. of Sec. 16 & N. ½ N. E. ¼ Sec. 21, T. 81, R. 34 west to secure $15,000.00 due March 1st, 1912. I cannot understand why you did not enclose the abstract to the property in question. You must have overlooked that as you understand it is impossible to pass on such a transaction without an abstract. I had been informed by Miss Luella Middle-

kauff that this note secured by the mortgage you send me matured March 1st, 1911, instead of March 1st, 1912. This makes a material difference with us as the estate ought to be closed before March 1st, 1912, and as the rate of interest is I believe, only 5 per cent. the mortgage note would hardly sell at par in your banks. I will hold the mortgage until I hear from you regarding the abstract and will confer with Miss Middlekauff on the other matter.''

A few days later Dr. Beal again writes returning the papers received from plaintiff and saying that Miss Middle-kauff's understanding of the offer was to the effect that the debt secured on the Audubon land was to become due March 1, 1911, instead of March 1, 1912, as indicated by the mortgage sent for inspection, that its payment at the earlier date was a very material matter and that ''unless some arrangement could be effected whereby we could realize on it before March 1, 1912, we cannot use it.'' Plaintiff then wrote the defendant direct protesting he had purchased the land and wanted to close the deal without further delay. On receipt of this demand the lady exercised her natural right to the last word in a final letter as follows:

''Your letter recd. In reply would say that the reason Dr. Beal objects to the rate of interest on the $15,000.00 note was because it was not due until March 1st, 1912, when you have left me under the impression all the time that it was due March 1st, 1911. When I have written to you repeatedly that all money had to be paid by March 1st, 1911, when deed would be delivered, why didn't you correct the error in your first reply? Then I would have told you at once that the note was not satisfactory and the sale was off. That was the under-standing that the note was to be satisfactory or we would call the sale off.

''You mentioned your expense for abstract we would like to call your attention to our expense in having a man go to see

the land.   The note has not proved satisfactory as I wrote to you in my first letter and when you were here that it must be. You wrote some time ago unless you got the deed when the contract was signed you would not take the farm.

"I replied that deed would not be delivered until all money was paid and the heirs are very emphatic upon that point that the deed shall not be delivered until all money is paid so I am free from all contracts.   If you make it right it must be done at once."

Relying upon the foregoing negotiations and correspondence as constituting an enforceable contract plaintiff asks a decree for specific performance and for damages.

Defendant demurred to the petition generally and further assigns specific grounds for demurrer which may be condensed as follows:   The alleged contract is within the statute of frauds and is not sufficiently expressed in writing, and the correspondence set out in the petition shows nothing more than mere proposals and counter-proposals upon none of which was there any meeting or agreement of the minds of the parties sufficient to constitute a contract of which the law will take cognizance.

The question here presented is not difficult of statement: Does the correspondence set forth a contract enforceable in equity or at law?   We have extended the statement of the case to include the entire negotiation believing that when thus viewed in its entirety the proper answer to the question thus raised cannot be the subject of serious controversy.   Beginning with the first communication between the parties and following the history of their negotiations step by step we think it impossible for one to find or designate a single place or instant of time when the minds of both parties met in accord upon the terms of the alleged or attempted sale.   In the first place while defendant advertised the land for sale and may have said she had authority to sell, the negotiation had not proceeded far when plaintiff was made aware of the fact that

defendant was not sole owner of the property and that the deal if one was made must be on terms satisfactory to Dr. Beal, and it is perfectly clear that he not only did not approve of the proposed terms but specifically objected to them. Again it is apparent there was no mutual understanding when the deed should be made and possession given. Counsel for appellant concedes that if the correspondence had closed with defendant's telegram and letter of June 14, 1910, there would have been no contract but says that plaintiff's answer thereto was a complete acceptance of the proposed terms. This point cannot be admitted for the very letter to which he replies holds the matter of accepting the assignment of the Audubon county mortgage in abeyance for investigation. And that plaintiff himself did not consider that he had a contract is clearly shown by his next letter where after stating his version of what had passed between them he concludes by saying, "that is the only way I will do anything, If you won't act soon I will not stand to my offer any longer as I can get cheaper land." Nor is there any subsequent place in their dealings at which an agreement upon the sale may be found. It is true that defendant thereafter sent a man to look at the mortgaged land and he reported the security good, and thereupon defendant in pursuance of the prior understanding asked plaintiff to send the mortgage and papers to Dr. Beal for his approval. She did not then or at any other time after plaintiff's visit to Illinois undertake to sell or claim the right to sell without such approval. It was not given. Plaintiff's offer was not accepted.

Having reached this conclusion it is unnecessary for us to determine to what extent if any plaintiff's case is affected by the statute of frauds. In this connection we will only say that plaintiff's deposit of $1,000 in the Manning bank could be of no avail to take the case out of the statute, for he was authorized to make the deposit only in case his offer was finally accepted

2. FRAUDS, STAT-
UTE OF: part
performance.

and there being no such acceptance his premature deposit could not operate as a part performance.

Some question is raised in argument upon a ruling of the trial court upon defendant's motion striking out a single sentence in the petition. The sentence so stricken was a statement of the pleader's conclusion and the ruling was correct. Even had the words remained in the petition it would still in our opinion fail to state a cause of action.

There was no error in sustaining the demurrer to the petition and the ruling is—*Affirmed.*

DEEMER, C. J., LADD, PRESTON and EVANS, JJ., concur.